**Kay Rodgers EVANS,
Plaintiff–Appellant,**

v.

**Troy Lee DALE, Jr., et al.,
Defendants–Appellees.**

No. 89–1772
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

March 23, 1990.
Rehearing Denied April 18, 1990.

M.W. Meredith, Jr. and David A. Sibley, Meredith, Donnel & Abernethy, Corpus Christi, Tex., for plaintiff-appellant.

Layne Kruse and Joli E. Boardman, Fulbright & Jaworski, Houston, Tex., and Albon O. Head, Jr., McLean, Sanders, Price, Head & Ellis, Ft. Worth, Tex., for Troy Lee Dale, Jr.

Morris Harrell and Susan L. Karamian, Locke, Purnell, Rain & Harrell, Dallas, Tex., for Bedowitz, Levin and Amre, Inc.

Before CLARK, Chief Judge, and WILLIAMS and DUHÉ, Circuit Judges.

CLARK, Chief Judge:

## I.

Kay Rodgers Evans appeals the dismissal without prejudice of her federal and pendent state claims against her former husband, Troy Lee Dale. The United States District Court for the Northern District of Texas applied the abstention doctrine of *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), in dismissing. We vacate the judgment appealed from and remand the action to the district court with instructions.

## II.

On October 10, 1986, a final divorce decree was entered in Texas state court between Evans and Dale. The decree included a property settlement. A portion of the property affected by the settlement was stock in AMRE, Inc., the corporation of which Dale was a director, officer, and major shareholder. Incident to the property settlement, Evans transferred her community property interest in the AMRE stock to Dale. This stock transfer was variously termed an "assignment" and a "sale."

On February 8, 1988, Evans filed a Bill of Review in the Texas court that issued her divorce decree. Evans claimed that Dale and other officers of AMRE had grossly misrepresented the value of the

AMRE stock prior to the property settlement and had withheld information that the corporation would soon be selling its shares publicly. Evans alleged that the misrepresentation damaged her in an amount in excess of ten million dollars. She requested that the Texas court redistribute the community property of the marriage. That action is still pending in the Texas state court.

Subsequently, Evans filed this suit in federal district court against Dale, AMRE, and other officers of AMRE. The federal complaint makes substantially the same allegations as Evans' Bill of Review. She claims that the actions of Dale and the other officers of AMRE violated the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq.* (the "RICO claims"), § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j (the "1934 Act" or "federal securities" claims), and Texas fraud and securities law. The district court dismissed Evans' suit without prejudice, abstaining in light of the Supreme Court's decision in *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943) and this court's decision in *DuBroff v. DuBroff*, 833 F.2d 557 (5th Cir.1987). The district court emphasized the reluctance of federal courts to decide cases involving matters of domestic law, especially when the plaintiff's claims can be brought in an adequate state forum. Evans appealed to this court.

### III.

Evans contends that the district court erred in refusing to hear her federal claims. She states that her claims only tangentially involve the divorce law of Texas and that the claims can be decided just as if the parties were of no relation to one another. Indeed, she notes that only one defendant, Dale, was ever related to her. Additionally, Evans argues that because her RICO and 1934 Act claims are within the exclusive jurisdiction of the federal courts, the district court had no authority to abstain.

Dale and his co-defendants respond that the district court properly abstained because even Evans' RICO and 1934 Act claims, whether of exclusive or concurrent federal jurisdiction, would involve the court in a redistribution of community property upon divorce. This, Dale argues, is a province traditionally left to the state courts, and thus *Burford* abstention was proper.

### A. Res Judicata

■ We delay any discussion of *Burford* abstention because the majority of Evans' claims in the district court are precluded by the Texas law of *res judicata.* Under 28 U.S.C. § 1738 (1966), federal courts must give a state court decision the same preclusive effect it would have in the state of the decision. *Scott v. Fort Bend County*, 870 F.2d 164, 167 (5th Cir.1989). Texas law dictates that once a property settlement is reached in a divorce proceeding, that decision acts as *res judicata* until the decision is overturned. *McRae v. Turner*, 626 S.W.2d 351, 352 (Tex.Ct.App.1981). After thirty days, the property settlement may only be modified by relitigation on a Bill of Review brought in the trial court. *McRae*, 626 S.W.2d at 352; Tex.R.Civ.P. 329b(f).

■ We have stated: "Under Texas law, res judicata bars litigation of all issues connected with a cause of action that might, with due diligence, have been raised in the former action between the same parties or their privies." *Scott*, 870 F.2d at 167. This rule bars the relitigation (other than by a Bill of Review) of the value of items in the community estate, *even when one spouse may have been guilty of misrepresentation as to the value of that item. See McRae*, 626 S.W.2d at 352. The preclusive effect of the Texas court's property valuation extends with full force to the federal courts. *See Migra v. Warren City School District Board of Education*, 465 U.S. 75, 80–81, 104 S.Ct. 892, 895–896, 79 L.Ed.2d 56 (1984); *Scott*, 870 F.2d at 167; 28 U.S.C. § 1738. Therefore, each claim which Evans by the exercise of due diligence could have brought in the Texas court is barred from consideration in the district court.

■ Evans asserts that she could have brought neither her RICO claims nor her 1934 Act claims in Texas court in 1986 because the federal courts have been granted exclusive jurisdiction over those causes of action. To the extent that this is true, her exclusively federal claims are not barred by *res judicata*. She is correct that her federal securities claims could be heard only in federal court. 15 U.S.C. § 78aa (Supp.1989). It is now clear, however, that state courts may exert jurisdiction concurrent with that of federal courts over civil RICO claims. *Tafflin v. Levitt*, — U.S. ——, 110 S.Ct. 792, 107 L.Ed.2d 887 (1990). But, it is not clear that a Texas court acting on Evans' complaint in 1986 would have accepted jurisdiction over a RICO claim. As late as 1987, Texas courts stated that federal courts held exclusive jurisdiction over RICO claims. *Greenstein v. Burgess Marketing*, 744 S.W.2d 170, 180 (Tex. Ct.App.1987); *Main Rusk Associates v. Interior Space Constructors*, 699 S.W.2d 305, 307 (Tex.Ct.App.1985). Also in 1987, however, we stated in a very similar case:

> "[a]lthough there is authority in Texas to the contrary, the great weight of authority in the lower federal courts is that RICO claims come within the usual presumption that federal jurisdiction is concurrent and not exclusive and that RICO, like most federal statutes, is thus enforceable in state courts ... [w]e think that this view is likely to prevail in Texas as well."

*DuBroff v. DuBroff*, 833 F.2d 557, 562 (5th Cir.1987) (*see* cases cited therein).

We are bound by *DuBroff's* consideration of the pre-*Tafflin* law of RICO jurisdiction in Texas. We conclude that Evans could have brought her RICO claims in Texas during her divorce proceeding. Had she been barred from pursuing that claim in the Texas courts, she would be allowed to bring the claim now in the district court. But her failure to attempt the claim in the Texas court in 1986, when the "great weight of authority" indicated that she would have been granted a hearing, subjects her current claims to the preclusive effect of *res judicata*. Evans' RICO claims can only be pursued through a Bill of Review in the Texas courts.

### B. Burford *Abstention*

■ Because the federal courts hold exclusive jurisdiction over federal securities regulation claims, Evans' 1934 Act claims are not precluded by the Texas application of *res judicata*. The district court abstention decision also covered these claims. Relying on *DuBroff*, the district court determined that because Evans' claims would involve the court in what was essentially a domestic law dispute, abstention was proper despite federal preemption. This decision was improper for two reasons. First, the court in *DuBroff* premised its decision on the belief that all federal claims asserted could be brought in a subsequent state court action. 833 F.2d at 562. Yet, in discussing this point, *DuBroff* mentions only the appellant's RICO claims and fails to address appellant's exclusively federal securities law claims. In any event, here Evans does raise allegations under the 1934 Act, and these claims cannot be heard in state court. Second, *DuBroff* relies on *New Orleans Public Service v. City of New Orleans*, 798 F.2d 858 (5th Cir.1986), for its application of the *Burford* abstention doctrine. *New Orleans Public Service*, however, has recently been reversed by the Supreme Court. *New Orleans Public Service v. Council of New Orleans*, — U.S. ——, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989). This court stated, "a court abstaining under *Burford* relegates a federal issue to state court jurisdiction because the federal issue touches some overriding state interest." 798 F.2d at 862, *quoting B.T. Inv. Managers v. Lewis*, 559 F.2d 950, 955 (5th Cir.1977). Speaking for the Supreme Court, Justice Scalia asserted:

> The present case does not involve a state law claim, nor even an assertion that the federal claims are "in any way entangled in a skein of state law that must be untangled before the federal case can proceed," *McNesse v. Board of Education for Community Unit School Dist. 187*, 373 U.S. 668, 674, 83 S.Ct. 1433, 1437, 10 L.Ed.2d 622 (1963). The Fifth Circuit acknowledged as much in

*NOPSI I,* but found "the absence of a state law claim ... not fatal" because, it thought, "[t]he motivating force behind *Burford* abstention is ... a reluctance to intrude into state proceedings where there exists a complex state regulatory system." 798 F.2d, at 861–862. Finding that this case involved a complex regulatory scheme of "paramount local concern and a matter which demands local administrative expertise," *id.,* at 862, it held that the District Court appropriately applied *Burford.*

While *Burford* is concerned with protecting complex state administrative processes from undue federal interference, it does not require abstention whenever there exists such a process, or even in all cases where there is a "potential for conflict" with state regulatory law or policy.

109 S.Ct. at 2514. By deciding the federal securities fraud issues asserted here, the district court will not usurp any part of Texas domestic relations law. It is true that the outcome of the exclusively federal issue may affect the relative value of property distributions which will be made by the Texas court and may even require a redistribution of that property. However, the decision regarding distribution or redistribution under Texas domestic relations law will remain entirely within the authority of the Texas court. If the district court orders disgorgement of the profits made by Dale in stock transactions subsequent to the divorce or takes other remedial action allowed by the federal securities laws, it will do so under its exclusive jurisdiction vested pursuant to those laws.

This court has reached similar decisions in two cases. In *Spector v. L.Q. Motor Inns, Inc.,* 517 F.2d 278 (5th Cir.1975), *cert. denied,* 423 U.S. 1055, 96 S.Ct. 786, 46 L.Ed.2d 644 (1976), we affirmed the district court's jurisdiction to decide a federal securities fraud claim where a husband accused his wife of fraud regarding stock transactions which arose in the course of a divorce proceeding. In *Rykers v. Alford,* 832 F.2d 895 (5th Cir.1987), we stated:

> However, the courts have declared that the domestic relations exception [to fed-

eral jurisdiction] is to be interpreted narrowly and that a case should not be dismissed merely because the parties are from the same family and a domestic dispute forms part of the context of the litigation ... The decisive factor is not the formal label attached to the claim (tort, contract, etc.), but the type of determination that the federal court must make in order to resolve the case ... if the court need only decide whether an already-set custody or child support award had been complied with, or whether the parties have committed acts that would be actionable even if everyone involved was unrelated, then the federal courts should retain the case.

832 F.2d at 900. The district court here should retain jurisdiction over Evans' federal securities claims regardless of her relationship to any of the defendants.

## IV.

The judgment of the district court is VACATED and the cause is REMANDED with directions to adjudicate Evans' federal securities claims and to dismiss with prejudice all remaining claims. Each party shall bear its own costs.

VACATED and REMANDED.